UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No.

2020 GMC Sierra 3500 HD, Vehicle Identification Number
1GT49WEYXLF349435, and
2018 Jaguar F-Pace, Vehicle Identification Number
SADCM2FV2JA328388

    Defendants.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon information and belief, in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A), the following defendant property:

   a. 2020 GMC Sierra 3500 HD with Vehicle Identification Number 1GT49WEYXLF349435, purchased by JR Handyman Pro's LLC / Thakur Sukhdeo; and

  b. 2018 Jaguar F-Pace with Vehicle Identification Number SADCM2FV2JA328388, purchased by JR Handyman Pro's LLC / Thakur Sukhdeo,

(collectively, the Defendant Assets).

  2. The Defendant Assets were seized on April 11, 2024, in Lehigh Acres, Florida, and are presently in the custody of the Federal Bureau of Investigation.

## VENUE AND JURISDICTION

  3. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395(b), because the Defendant Assets were seized and are located in this district.

  4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

  5. This Court has *in rem* jurisdiction over the Defendant Assets because pertinent acts giving rise to the forfeiture occurred in the Middle District of Florida. 28 U.S.C. § 1355(b)(1)(A).

  6. Because the Defendant Assets are in the government's possession, custody, and control, the United States requests that this Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(i). Rule G(3)(b)(i) requires the Clerk to issue a warrant of arrest *in rem* for defendant property if such property is in the government's possession, custody, or control.

7. After the Court issues the warrant of arrest *in rem*, the United States will execute the warrant pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

### STATUTORY BASIS FOR FORFEITURE

8. The Defendant Assets represents proceeds of violations of 18 U.S.C. § 1343 (wire fraud) and are, therefore, subject to civil forfeiture by the United States, pursuant to 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses. 18 U.S.C. § 981(a)(1)(C). Section 1956(c)(7)(A) incorporates the racketeering offenses under 18 U.S.C. § 1961. Wire fraud offenses in violation of 18 U.S.C. § 1343 are specified unlawful activities under 18 U.S.C. § 1961(1). *See* 28 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7)(A), and 18 U.S.C. § 1961(1).

9. Additionally, the monetary transactions made to purchase the Defendant Assets were conducted in violation of 18 U.S.C. § 1957(a) because they were knowingly conducted with more than $10,000 in funds derived from specified unlawful activity (specifically, wire fraud), and, as such, they are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

10. Specific facts supporting the forfeiture of the Defendant Assets have been provided by Jordan Brown, Special Agent of the Federal Bureau of Investigation (FBI).

# FACTS

11. Jordan Brown has been employed as a Special Agent with the FBI since 2021, and is currently assigned to FBI's Tampa Field Office. Prior to his employment as a Special Agent with the FBI, he served as an Intelligence Analyst with the FBI from June 2019 until June 2021. He has personally participated in this investigation and has witnessed many of the facts and circumstances described herein. He has also received information from other law enforcement officers relating to this investigation.

### Overview of the Economic Injury Disaster Program

12. In or around March 2020, the President declared the ongoing Coronovirus Disease 2019 (COVID-19) pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207. The President also signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act and the Families First Coronavirus Response Act.

13. The United States Small Business Administration (SBA) was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act established several new temporary programs and provided for the expansion of

others to address the COVID-19 outbreak, which was declared a nationwide disaster by the President on or about March 13, 2020.

14.     One government response to the COVID-19 outbreak was an expansion of an existing disaster-related program—the Economic Injury Disaster Loan (EIDL)—to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans. Intially, the loans were capped at $150,000. Over the course of the program the maximum eligible loan amount was increased several times. Beginning April 6, 2021 the maximum loan amount was increased from $150,000.00 to $500,000 and on September 8, 2021, the loan cap was increased from $500,000.00 to $2 million.

15.     EIDL funds were issued directly from the United States Treasury, and applicants applied through the SBA via an online portal and application. To obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the period preceding January 31, 2020. For a business to be eligible for an EIDL, the business must have been in operation before February 1, 2020. Applicants electronically certified that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in

sanctions, including criminal penalties. Applicants also completed loan agreements with the SBA.

16. All applications submitted on July 11, 2020, or after were handled by an SBA contractor with servers located in Des Moines, Iowa. Prior to July 11, 2020, EIDL applications were submitted through three different servers, located in Boydton, VA, West Des Moines, IA, or Quincy, WA. Approval of a loan application and the amount of a loan was based, in part, on the information provided on the application about the number of employees, gross revenue, and cost of goods, as described above. The EIDL loan applications required minimal documentation and information from small businesses to process the loan for approval.

17. Once an SBA EIDL application is approved, the SBA's Denver Finance Center[1], located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications. The disbursement of the EIDL funds were transmitted by the Financial Management System (FMS) to the Treasury and then to the recipient's bank account. The primary server for the FMS is in Sterling, VA. Upon approval of an application for an EIDL or advance, SBA would disburse the funds. EIDL loan proceeds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

---

[1] Denver Finance Center, OCFO, SBA, 721 19th Street, Suite 373, Denver, CO 80202.

### Overview of the Investigation

18. SA Brown has been investigating Thakur and Kedeish Sukhdeo (the Sukhdeos), a married couple that reside in Lehigh Acres, Florida, for their misuse of EIDL funds. Specifically, the Sukhdeos obtained a $414,000 EIDL through their business, J.R. Handyman Pro's LLC (JR Handyman), and misused the funds to purchase a 2020 GMC Sierra 3500 HD for $93,994.42 and a 2018 Jaguar F-Pace for $59,145.00.

### The Sukhdeos' Background

19. The Sukhdeos have lived in Lehigh Acres, Florida since approximately May 2020. Thakur Sukhdeo last received reported wages from a company in St. Petersburg, Florida during the third quarter of 2015. The Florida Department of Commerce has no wage and hour records for Kedeish Sukhdeo. On the social media website Facebook.com, Kedeish Sukhdeo refers to herself as "Author Kedeish Sukhdeo." The Sukhdeos, on their joint, public Facebook page, work as "Life Coach, Author & Entrepreneur, [and] C.E.O JR Handyman Pro's LLC." Kedeish Sukhdeo authored a 62-page book titled, *He Saw the Best in Me: A Story of New Identity*, on or about April 1, 2020, according to the e-commerce website amazon.com.

### Overview of J.R. Handyman Pros, LLC

20. According to the Florida Department of State, JR Handyman was registered as a Limited Liability Company (LLC) on October 30, 2018. The initial address for the business was listed as 415 Windermere Dr, Lehigh Acres, Florida. Since the date JR Handyman was registered as an LLC, Thakur Sukhdeo has been

listed as the President and Kedeish Sukhdeo has been listed as the Vice President of the business. JR Handyman has been both an active and inactive LLC during its existence as a Florida LLC. Specifically, JR Handyman was dissolved on or about September 27, 2019, and reinstated on or about February 14, 2020. JR Handyman was dissolved again on or about September 24, 2021, and reinstated on or about March 24, 2022, and has remained active as of March 8, 2024. JR Handyman never reported to the Florida Department of Commerce that it paid wages.

### The EIDL Application and Loan Agreement

21.     On or about July 6, 2021, an EIDL application for JR Handyman was submitted to the SBA electronically via IP address 2603:3017:cd0:8000:4045:cc11:8357:19e6. According to an online IP address tool, the IP address returns to Comcast Cable Communications LLC with a location of Fort Myers, Florida. Thakur Sukhdeo was listed on the electronic application as the primary contact on the loan. According to the application, ownership was split evenly between Thakur Sukhdeo and Kedeish Sukhdeo. The application listed two contacts for the company: Thakur Sukhdeo and Kedeish Sukhdeo, and listed the business address in Lehigh Acres, Florida 33972, and business email address as kedeish33@gmail.com.

22.     In the initial EIDL application, JR Handyman's gross revenues for the 12 months prior to January 31, 2020, were listed as $64,155. JR Handyman's cost of goods sold for the same period was listed as $0. During the EIDL application review

process (discussed below), JR Handyman's gross revenues were updated by the SBA to $206,998 after the SBA reviewed JR Handyman's 1120S tax transcript for 2019.

23. After their review of JR Handyman's initial EIDL application, the SBA issued a letter, dated August 9, 2021, that notified the Sukhdeos that their loan request was denied for "unverifiable information." On or about October 1, 2021, a reconsideration request was sent to the SBA by Thakur Sukhdeo. Thakur Sukhdeo then sent additional supporting documents to include, copies of driver's licenses, a passport, and tax documents. After a review of the additional documents, as well as the Sukhdeos' and JR Handyman's tax transcripts, the SBA approved funding for a $414,000 EIDL on or about March 17, 2022. At this time, SA Brown has not been able to determine whether JR Handyman's 2019 1120S tax return – relied on by the SBA in calculating the EIDL amount – was accurate. However, it should be noted that, in JR Handyman's 2019 1120S tax return, the business claimed to have made $5,932 in income based on $206,998 in gross receipts and $201,066 in deductions.

24. On March 17, 2022, the Sukhdeos electronically signed – using DocuSign – and executed an SBA Loan Authorization and Agreement, Note, and Security Agreement for a $414,000 EIDL. The Loan Authorization and Agreement contained a section titled "Use of Loan Proceeds." This section stated, the "[b]orrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020, and continuing thereafter…" As detailed below, the Sukhdeos did not use the EIDL funds for working capital to alleviate economic injury caused by the

pandemic. Instead, the Sukhdeos misused EIDL funds for their own personal enrichment, including the purchase of two personal vehicles – the Defendant Assets.

25. The SBA Security Agreement that was also electronically signed by the Sukhdeos on March 17, 2022, contained a section titled "Borrower Certifications" that also limited the use of EIDL funds. Specifically, that "none of the [o]bligations are or will be primarily for personal, family or household purposes." The obligation, per the loan agreement, was the EIDL amount, including interest, other fees, and expenses. As further discussed below, the Sukhdeos misused EIDL funds for personal purposes. The Sukhdeos, therefore, made a false certification concerning the use of EIDL funds in the SBA Security Agreement.

## The Sukhdeos' Misuse of EIDL Funds

A. **The 2018 Jaguar**

26. On March 24, 2022, $413,900 in EIDL funds were deposited into a personal checking account at Financial Institution #1 ending in 53_0050 (Account 53_0050) in the name of Thakur Sukhdeo. The Sukhdeos were listed as sole signatories on the account. Prior to the receipt of EIDL funds, the account had a balance of $1,178.24.

27. The day after the EIDL funds were deposited, all the funds ($413,900) were transferred to a Financial Institution #1 business checking account ending in 72_0050 (Account 72_0050) in the name of J.R. Handyman Pros LLC. Account 72_0050 was opened on March 25, 2022, with Thakur Sukhdeo and Kedeish Sukhdeo listed as signatories on the account. According to the business account

application, the nature of the business was listed as "home remodeling and construction" with an annual gross revenue of $300,000.00. Furthermore, the application listed the date the business was established as October 30, 2018. Additionally, a business debit card was connected to the account with the Sukhdeos listed as authorized users. The transfer of $413,900 in EIDL funds into Account 72_0050 represented the account's first deposit.

28. On April 12, 2022 – 21 days after the receipt of EIDL funds – a cashier's check was purchased from Account 72_0050 and made payable to Jaguar Land Rover of Fort Myers in the amount of $68,984.61. Other than the EIDL funds that were transferred into the account when it was opened, Account 72_500 only had a single $1,000 deposit prior to the purchase of the cashier's check. Even assuming that the $1,000 deposit came from untainted sources, those funds would not have been sufficient to fund the purchase of the $68,984.61 cashier's check. The remaining $67,984.61 of the check was funded by the EIDL funds. Given the proximity of time between the execution of the EIDL agreement and the misuse of EIDL funds for the purchase of the Jaguar, there is probable cause to believe that the Sukhdeos intended to defraud the SBA on the date the loan agreement was executed.

29. A review of records provided by Jaguar Land Rover of Fort Myers revealed that Thakur Sukhdeo purchased a used 2018 white Jaguar F-Pace utility vehicle (VIN: SADCM2FV2JA328388) for $59,145.00. As part of the purchase, a 2013 Chevrolet Silverado 1500 (VIN: 1GCRCSE01DZ215777) belonging to Kedeish Sukhdeo was traded in, which was valued at $14,000.00 with $21,950.00 still owed

on the vehicle. The difference between the value of the 2013 Chevrolet and the pay-off amount was included in the purchase price of the Jaguar. It should be noted that the 2013 Chevrolet Silverado 1500 that was traded in for the Jaguar was purchased by Kedeish Sukhdeo on or about March 17, 2021 – approximately a year and month before the Jaguar was purchased. The Jaguar was titled in the names of J.R Handyman Pro's LLC and Thakur Sukhdeo.

30. On April 16, 2022, an account on Instagram (a social media website/application) with the username thakur_kedeish_sukhdeo posted a picture of a white Jaguar with the caption, "Congrats to us the Sukhdeo our new business executive vehicle." A screen capture of the Instagram post is included below. The use of a luxury vehicle, like a Jaguar F-Pace, as a business executive vehicle is

inconsistent with a handyman business.



31.     Weeks later, on May 9, 2022, another post was added to the profile with what appears to be the same vehicle and Kedeish Sukhdeo in front of the vehicle with the caption "my Mother's Day was bless!!" See a screen capture of the Instagram post is below.

13



32.     Because the Jaguar was purchased with proceeds obtained from wire fraud, the vehicle is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

33.     Additionally, the monetary transaction made to purchase the Jaguar was conducted in violation of 18 U.S.C. § 1957, because the purchase involved a monetary transaction knowingly conducted with more than $10,000 in criminally derived funds. Therefore, the vehicle is also subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**B.      The 2020 GMC Sierra**

34.     On April 21, 2022—28 days after the receipt of EIDL funds—an outgoing wire transfer was sent to Lorenzo Buick GMC from the Account 72_500 account in the amount of $93,994.42, with "Purchase of GMC Denali Sierra" included in the payment details. Other than the $1,000 deposit discussed in

paragraph 30, above, there were no other deposits made into the account before the wire transfer. Therefore, again, even assuming the $1,000 deposit came from untainted sources, these funds would not have been sufficient to fund the $93,994.42 wire transfer to Lorenzo Buick GMC. Therefore, the remaining $92,994.42 of the wire was funded by the EIDL funds. Given the proximity of time between the execution of the EIDL agreement and the misuse of EIDL funds for the purchase of the GMC Sierra, there is probable cause to believe that the Sukhdeos intended to defraud the SBA on the date the loan agreement was executed.

35.   A review of records provided by Lorenzo Buick GMC revealed that Thakur Sukhdeo purchased a black 2020 GMC Sierra 3500HD (VIN: 1GT49WEYXLF349435) on April 21, 2022, with a market value of $86,980.00. The GMC Sierra was titled in the names of J.R. Handyman Pro's LLC and Thakur Sukhdeo.

36.   Following the truck's purchase, on April 23, 2022, the Facebook.com profile Thakur Kedeish Sukhdeo posted three photos of a black GMC Sierra 3500HD. Below is a screen capture of one of the posted photos.



37. On February 14, 2023, another post appeared on the Suhkdeo's joint Facebook account with what appears to be the same vehicle and Thakur Suhkdeo standing in front of the vehicle. See a screen capture of the Facebook post below.



38. Because the GMC Sierra was purchased with proceeds obtained from wire fraud, the vehicle is subject to civil forfeiture pursuant to 18 U.S.C.

§ 981(a)(1)(C), and criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c).

39.    Additionally, the monetary transaction made to purchase the GMC Sierra was conducted in violation of 18 U.S.C. § 1957, because the purchase involved a monetary transaction knowingly conducted with more than $10,000 in criminally derived funds. Therefore, the vehicle is also subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), and criminal forfeiture pursuant to 18 U.S.C. § 982(a)(1).

40.    SA Brown observed the Jaguar and GMC Sierra parked at the Sukhdeos' residence in Lehigh Acres, Florida. Neither contained any signage for a business on the vehicles, including any signage for J.R. Handyman Pros, LLC.

41.    As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Assets are derived from proceeds of wire fraud, and also constitute property involved in money laundering violations.

## CONCLUSION

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff United States of America requests that this Court initiate a process of forfeiture against the Defendant Assets, and duly notice all interested parties to appear and show cause why the

forfeiture should not be decreed. The United States further requests the Court order the Defendant Assets forfeited to the United States for disposition according to law and grant the United States such other and further relief as this case may require.

Dated: September 4, 2024    Respectfully submitted,

ROGER B. HANDBERG,
United States Attorney

By: /s/ Suzanne C. Nebesky

SUZANNE C. NEBESKY
Assistant United States Attorney
Florida Bar No. 59377
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6220
E-mail: suzanne.nebesky@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Jordan Brown, declare under penalty of perjury that:

I am a Special Agent with the Federal Bureau of Investigation. I have read the foregoing Verified Complaint for Forfeiture *in Rem* and have personal knowledge that the matters alleged as fact in the Complaint are true.

I have acquired my knowledge in this matter through my personal experience, observation, investigation, and training, and from witnesses, records, and other law enforcement officers.

Executed this 4th day of September, 2024.

Jordan Brown, Special Agent
Federal Bureau of Investigation